UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
JACK ARGILA, in his fiduciary capacity
as a Trustee for the POINTERS,
CLEANERS & CAULKERS WELFARE,
PENSION & ANNUITY FUNDS, the
BRICKLAYERS JOINT APPRENTICE
TRAINING FUND, the LABOR
MANAGEMENT FUND, and the
PROMOTION FUND, and as President of
the BRICKLAYERS AND ALLIED
CRAFTWORKERS LOCAL UNION NO.
1, B.A.C.I.U., AFL-CIO; and the
TRUSTEES of the BRICKLAYERS AND
TROWEL TRADES INTERNATIONAL
PENSION FUND and the
INTERNATIONAL MASONRY
INSTITUTE,

                       Plaintiffs,

      -against-

R.Z. UNITED CONSTRUCTION, INC.;
RIADUL ISLAM; MD MEHERUL ISLAM
MUNNA; NEELAM CONSTRUCTION
CORP.; and VIGILANT INSURANCE
COMPANY,

                  Defendants.
-----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
23-CV-2547 (RPK) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

Plaintiffs Jack Argila, as a Trustee for the Pointers, Cleaners & Caulkers Welfare, Pension & Annuity Funds, the Bricklayers Joint Apprentice Training Funds, the Labor Management Fund, and the Promotion Fund (collectively, the "PCC Funds"), and as President of the Bricklayers and Allied Craftworkers Local Union No. 1, B.A.C.I.U., AFL-CIO ("Local 1" or the "Union"; and the Trustees of the Bricklayers & Trowel

Trades International Pension Fund ("IPF") and the International Masonry Institute ("IMI") (collectively, the "International Funds"), commenced this action against Defendants R.Z. United Construction, Inc. ("R.Z. United"), Riadul Islam ("Islam"), MD Meherul Islam Munna ("Munna"), Neelam Construction Corp. ("Neelam"), and Vigilant Insurance Company ("Vigilant"), on April 3, 2023. *See generally* Compl., ECF 1. All Defendants except R.Z. United and Munna initially participated in the litigation. *See, e.g.*, Sept. 12, 2023 ECF Min. Entry & Order (appearance by Defendants Islam, Neelam, and Vigilant at initial conference); Letter from Islam, ECF 20 (communicating intent to appear *pro se*).

After settling their claims against Defendants Neelam and Vigilant, Plaintiffs filed an amended complaint as to Defendants R.Z. United, Islam, and Munna.[1] *See* Notice of Settlement, ECF 30; Stipulation of Dismissal, ECF 33; Sept. 27, 2024 ECF Order dismissing parties; Am. Compl., ECF 36. The amended complaint seeks delinquent benefit contributions and related relief under Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1132(a)(3), 1145 ("ERISA"); Section 301(a) of the Labor Management Relations Act ("LMRA"), *see* 29 U.S.C. § 185; the New York Lien Law, Article, 3-A § 70 ("Lien Law"); and common law. *See* Am. Compl., ECF 36, at 1, 22–26, 29–31. Since the filing of the amended complaint on November 20, 2024, Defendants R.Z. United, Islam, and Munna have not answered nor appeared in this case. *See generally* Docket.

_____

[1] The amended complaint also named Zoria Housing LLC and Doe Surety Company as Defendants. *See* Am. Compl., ECF 36. Those parties later settled, and the claims against them were dismissed. *See* Pls.' Status Report, ECF 42; Jan. 29, 2025 ECF Order; Notice of Voluntary Dismissal, ECF 45; Mar. 4, 2025 ECF Order.

Currently before the Court is Plaintiffs' motion for default judgment against Defendants R.Z. United, Islam, and Munna, which the Honorable Rachel P. Kovner referred to the undersigned Magistrate Judge for a report and recommendation. Mot. for Default J., ECF 46; Apr. 21, 2025 ECF Order. For the reasons set forth below, the Court respectfully recommends granting Plaintiffs' motion in part and denying it in part.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. Factual Background

Local 1 is a labor organization as defined in Section 301 of the LMRA. Am. Compl., ECF 36, ¶ 10. As alleged in the amended complaint, the Union collectively bargained with employers, including Defendants R.Z. United, Islam, and Munna, on behalf of Union employees engaged in the masonry trade at various construction sites, including New York City Housing Authority ("NYCHA") projects. *See id.* ¶¶ 10, 20, 23; Argila Aff., ECF 47, ¶¶ 4–5; Pls.' Mem. of L. in Supp. of Mot. for Default J. ("Pls.' Mem."), ECF 50, at 2–3. The Union and Defendants R.Z. United, Islam, and Munna entered into a collective bargaining agreement ("CBA"), effective July 1, 2015, through June 30, 2019, and a successor CBA, effective July 1, 2019, through June 30, 2023. Argila Aff., ECF 47, ¶¶ 4–7; *see generally* Argila Aff., Ex. A ("2015 CBA"), ECF 47-1; Argila Aff., Ex. B ("2019 CBA"), ECF 47-2. At all relevant times, Defendant R.Z. United was also a party to an agreement titled the Project Labor Agreement Covering Specified Renovation & Rehabilitation of NYCHA Buildings and Structures, which incorporated the 2015 and 2019 CBAs. *See* Am. Compl., ECF 36, ¶¶ 40–42.

Under the terms of the CBAs, as relevant here, Defendant R.Z. United agreed to make contributions to the PCC Funds and the International Funds, based on the hours of work performed by Union employees. Am. Compl., ECF 36, ¶ 49; Argila Aff., ECF 47, ¶¶ 15, 18. Likewise, Defendant R.Z. United agreed to "deduct and remit dues and assessments for all Local 1 members" in the amounts outlined in the CBAs and to "submit monthly employer remittance reports" verifying the Union employees' hours worked. Argila Aff., ECF 47, ¶¶ 15–19; *see* Am. Compl., ECF 36, ¶¶ 50–52; 2015 CBA, ECF 47-1, Arts. XIII–XVIII, at ECF pp. 13–24; 2019 CBA, ECF 47-2, Arts. XIII, XV–XVII, at ECF pp. 14–24. The CBA further required R.Z. United to submit its books and records, including payroll records, for periodic review and auditing. *See* Am. Compl., ECF 36, ¶¶ 53–59. Finally, the signature page of the 2015 CBA required Defendants Islam and Munna to agree to be personally liable for R.Z. United's failure to comply with the CBA. *See* Am. Compl., ECF 36, ¶¶ 29–38; 2015 CBA, ECF 47-1, at ECF p. 31.

In or about May 2022, Plaintiffs, through their auditor, Kobgo Associates, Inc. ("Kobgo"), attempted to review R.Z. United's books and records for the period spanning January 2019 through December 2022. *See* Am. Compl., ECF 36, ¶ 75; Argila Aff., ECF 47, ¶ 26; Duravcevic Aff., ECF 48, ¶ 5. Defendant R.Z. United provided some but not all of the records necessary to conduct the audit, and during the course of the review, the auditor discovered that R.Z. United "did not maintain a trial balance or general ledger." Duravcevic Aff., ECF 48, ¶¶ 5–10; *see* Am. Compl., ECF 36, ¶¶ 75–76; Argila Aff., ECF 47, ¶¶ 27–28, 30; Morgan Decl., ECF 49, ¶¶ 28–32.

4

## II.  Procedural History

### A.  Initial Discovery and the Settlement Agreements

Plaintiffs initiated this action to compel cooperation with the audit. *See* Compl., ECF 1; Morgan Decl., ECF 49, ¶ 33. While the lawsuit progressed, Kobgo was able to produce a preliminary Delinquency and Omissions Schedule ("D&O Schedule") showing that R.Z. United had not remitted $314,098.78 owed under the CBA; following objections from R.Z. United and Neelam,[2] the delinquency estimate was revised to $295,963.22, plus $8,675.00 in audit costs. Am. Compl., ECF 36, ¶¶ 82–84; Argila Aff., ECF 47, ¶¶ 29–30; Duravcevic Aff., ECF 48, ¶¶ 7–8, 11. During this period, as discussed above, *pro se* Defendant Islam attended conferences before the Court, but neither he, Munna, nor R.Z. United ever filed an answer or otherwise responded to the complaint. *See* Sept. 12, 2023 ECF Min. Entry & Order; Letter from Islam, ECF 20; Nov. 13, 2023 ECF Min. Entry & Order; Jan. 4, 2024 ECF Min. Entry & Order; Mar. 5, 2024 ECF Min. Entry & Order.

In September 2024, Neelam and its surety, Vigilant Insurance Company, resolved claims against R.Z. United relating to Neelam's projects through a settlement agreement, where Neelam and Vigilant agreed to pay $214,499.54. *See* Argila Aff., ECF 47, ¶ 31; Argila Aff., Ex. H, ECF 47-8; Notice of Settlement, ECF 30. Plaintiffs then amended their complaint to include additional Defendants, Zoria Housing LLC and Doe Surety. *See* Am. Compl., ECF 36. Plaintiffs alleged that these entities had entered into a subcontracting agreement with R.Z. United to perform work on NYCHA projects

---

[2] R.Z. United had directed Neelam, as its general contractor, to submit payments to the funds on its behalf from July 1, 2019, through June 30, 2021. *See* Am. Compl., ECF 36, ¶ 39.

5

and issued a labor and material payment bond covering work performed on these projects, respectively. *See id.* ¶¶ 64–74. Without these Defendants ever appearing, Plaintiffs entered a settlement agreement with Zoria Housing LLC in January 2025, and, in March 2025, Plaintiffs voluntarily dismissed the claims against Zoria Housing LLC and Doe Surety in exchange for $38,752.24. *See* Pls.' Status Report, ECF 42; Jan. 29, 2025 ECF Order; Notice of Voluntary Dismissal, ECF 45; Argila Aff., Ex. I, ECF 47-9. Plaintiffs assert that the remaining delinquency stands at $42,709.94, comprising $39,177.09 in unpaid contributions owed to the Funds and $3,532.85 in unpaid dues and assessments owed to the Union. Morgan Suppl. Decl., ECF 52, ¶¶ 14, 18; *see also* Revised Delinquency Spreadsheet, ECF 52-1, at ECF p. 1; Revised Statement of Damages, ECF 52-2. Of the $42,709.94 remaining delinquency, Plaintiffs represent that $26,371.11 is associated with the Manhattanville Houses project, and $16,338.83 is associated with R.Z. United's portion of miscellaneous projects evaluated during the audit, and summarized on a "Miscellaneous" schedule. Morgan Suppl. Decl., ECF 52, ¶¶ 14, 18.

Since the Amended Complaint was filed on November 20, 2024, Defendant Islam has not re-appeared before this Court.

### B. Default Proceedings

As discussed, Plaintiffs initially filed the complaint on April 3, 2023, and filed proof of service on July 19, 2023. *See* Compl., ECF 1; Summons Issued, ECF 4; Proofs of Service, ECF 14 (Islam), 15 (Munna), 16 (R.Z. United). On November 20, 2024, Plaintiffs filed an amended complaint. Am. Compl., ECF 36. Defendants failed to respond to the amended complaint by this Court's deadline of January 21, 2025. *See* Dec. 23, 2024 ECF Order; *see also* Certificate of Service, ECF 40 (confirming service of the Court's order extending the deadline to respond to the amended complaint on

R.Z. United, Islam, and Munna). Plaintiffs then requested a certificate of default on January 28, 2025. *See* Req. for Certificate of Default, ECF 41. The Clerk of Court issued a certificate of default on January 31, 2025, and Plaintiffs filed a certificate of service, affirming that Plaintiffs' counsel had served a copy of the Clerk's certificate of default on Defendants R.Z. United, Islam, and Munna by first-class mail, and on Islam by email. *See* Clerk's Entry of Default, ECF 43; Certificate of Service, ECF 44. Plaintiffs moved for default judgment on April 18, 2025, and notice of the motion was served on Defendants via first-class mail on April 22, 2025.[3] *See* Mot. for Default J., ECF 46; Certificate of Service, ECF 51. The Honorable Rachel P. Kovner has referred the motion to the undersigned Magistrate Judge for a report and recommendation. *See* Apr. 21, 2025 ECF Order Referring Mot.

On December 15, 2025, the Court issued an order, directing Plaintiffs to file a corrected delinquency spreadsheet and other documents initially submitted in support of their default motion by December 31, 2025, in light of numerous errors and inconsistencies in Plaintiffs' original filings. *See* Dec. 15, 2025 ECF Order. Specifically, the Court observed that, in addition to rounding errors that rendered certain sums inconsistent across various filings, Plaintiffs' interest calculations were based on incorrect accrual dates. *Id.* The Court further noted that, as a result of these errors, Plaintiffs' request for liquidated damages could not be adequately assessed. *Id.* (citing 29 U.S.C. § 1132(g)(2)(C) (providing that the determination of an award of liquidated damages is dependent on the amount of prejudgment interest)). On

---

[3] The certificate of service filed on April 23, 2025, states that counsel for Plaintiffs certifies that the mailing took place "on April 22, 2024." Certificate of Service, ECF 51. The Court interprets "2024" as a typographical error.

December 31, 2025, Plaintiffs submitted (1) a supplemental declaration of Katherine M. Morgan, describing counsel's process for correcting and revising their initial submissions; (2) a revised delinquency spreadsheet; (3) a revised statement of damages; and (4) a revised proposed judgment. *See* Morgan Suppl. Decl., ECF 52; Revised Delinquency Spreadsheet, ECF 52-1; Revised Statement of Damages, ECF 52-2; Revised Proposed Judgment, ECF 52-3.

## DISCUSSION

### I.  Legal Standards

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a default judgment. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The plaintiff must first obtain an entry of default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of default is entered, and on the plaintiff's application, the district court may then enter a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Loc. Civ. R. 55.2(b). A "plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for default judgment is "left to the sound discretion of [the] district court because it is in the best position to assess the individual

circumstances of a given case and to evaluate the credibility and good faith of the parties."[4] *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

The district court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.* It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*,

---

[4] Plaintiffs must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2. Having carefully reviewed the filings in this case, the Court finds that Plaintiffs' motion papers substantially comport with these rules. Specifically, Plaintiffs requested a certificate of default in accordance with Local Rule 55.1(a)(1), which was mailed to all Defendants at their last known address and also sent to Defendant Islam via email. *See* Req. for Certificate of Default, ECF 41; Certificate of Service, ECF 44. Plaintiffs also demonstrated that Defendants have failed to defend the action and that the pleadings were properly served, in accordance with Local Rule 55.1(a)(2). *See* Morgan Decl. in Supp. of Req. for Certificate of Default ("Morgan Default Decl."), ECF 41-1, ¶¶ 3–5, 10, 17; Proofs of Service, ECF 14, 15, 16. Plaintiffs have further demonstrated that Defendants Islam and Munna (the "Individual Defendants") are not minors and were not in the military during the relevant time period. *See* Morgan Default Decl., ECF 41-1, ¶¶ 19–20. Finally, Plaintiffs have certified the mailing of the default judgment motion and supporting documents to Defendant R.Z. United's last known business address and the Individual Defendants' home addresses, as well to Defendant Islam via email, in accordance with Local Rule 55.2(a)(3). *See* Certificate of Service, ECF 51.

183 F.3d 151, 155 (2d Cir. 1999). Here, too, the "[p]laintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *J & J Sports Prods., Inc. v. Ahuachapan Corp.*, 422 F. Supp. 3d 652, 663 (E.D.N.Y. 2019) (citing *CIT Bank, N.A. v. Dambra*, No. 14-CV-3951 (SLT) (VMS), 2015 WL 7422348, at *5 (E.D.N.Y. Sept. 25, 2015); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991)); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53–54 (2d Cir. 1993) (explaining that courts can assess damages based on "'detailed affidavits and documentary evidence'" (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989))). In the default posture, the moving party is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

## II. Analysis

### A. Entry of Default

In determining whether a defendant's conduct warrants entry of a default judgment, courts apply the same factors applicable to a motion to set aside entry of default. *See Enron Oil*, 10 F.3d at 96. These factors include "1) whether the defendant's default was willful; 2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.* ("*Duce. Constr. Corp.*"), No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Enron Oil*, 10 F.3d at 96. "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default

10

would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96. In this case, the Court concludes that entry of a default judgment is appropriate.

    1. *Willfulness*

In the context of default, willfulness "refer[s] to conduct that is more than merely negligent or careless." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). That said, a defendant's "failure to respond to a complaint evinces willful default." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 80 (E.D.N.Y. 2020) (citing *McNulty*, 137 F.3d at 738–39). Willfulness may also be presumed where, in addition to being properly served with the complaint, the defendant is notified of court proceedings and yet fails to respond. *See, e.g.*, *United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006); *see also Antoine*, 489 F. Supp. 3d at 81.

Defendants' failure to respond or otherwise appear in this action supports a finding of willfulness. Plaintiffs adequately served the Corporate Defendant R.Z. United by delivering the summons and complaint to the New York Secretary of State, as permitted by New York law. *See* Proof of Service, ECF 16; N.Y. Bus. Corp. Law § 306(b)(1); Fed. R. Civ. P. 4(e)(1), (h)(1); *see also Jean-Louis v. Warfield*, 898 F. Supp. 2d 570, 574 (E.D.N.Y. 2012) (explaining that New York law permits service upon a corporation via the New York Secretary of State). Plaintiffs also adequately served the Individual Defendants by serving copies of the summons and complaint on Defendants Islam and Munna personally. *See* Proof of Service, ECF 14 (Islam); Proof of Service, ECF 15 (Munna); *see also De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) (summary order) (observing that an amended complaint that does not assert a new claim for relief need not be served on a party in default). Although Defendant Islam, the CEO and principal of R.Z. United, briefly appeared in his individual capacity *pro se* at the outset

11

of this litigation, he never responded to the complaint, and ceased appearing before this Court altogether after Plaintiffs filed the amended complaint. *Compare* Sept. 12, 2023 ECF Min. Entry & Order; Letter from Islam, ECF 20; Nov. 13, 2023 ECF Min. Entry & Order; Jan. 4, 2024 ECF Min. Entry & Order; Mar. 5, 2024 ECF Min. Entry & Order; *with* Dec. 23, 2024 ECF Order; *see also Chudomel v. Dynamic Recovery Servs., Inc.*, No. 12-CV-5365 (NGG) (RLM), 2013 WL 5970613, at *4 (E.D.N.Y. Nov. 8, 2013) (finding that a defendant's default was willful when it "abandon[ed] its short-lived defense of this action"). Neither Islam, Munna, nor R.Z. United responded to or answered the amended complaint by the deadline this Court set. *See* Dec. 23, 2024 ECF Order; Morgan Decl., ECF 41-1, ¶ 17. Defendants also failed to respond after being sent Plaintiffs' request for a certificate of default and the Clerk of Court's entry of default. *See* Certificate of Service, ECF 44. Defendants again failed to respond or appear after Plaintiffs moved for default judgment and sent notice of the motion. *See* Mot. for Default J., ECF 46; Certificate of Service, ECF 51.

In light of Defendants' failure to respond, despite being provided more than sufficient notice of this proceeding, the Court weighs this factor in favor of default.

2. *Meritorious Defense*

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Rather, "'[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). Here, Defendants have entirely failed to respond to the amended complaint. *See generally* Docket. In such instances, "courts are unable to make a determination [of] whether the defendant has a

meritorious defense." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013). Accordingly, "this factor weighs in favor of granting a default judgment." *Id.*

### 3. *Prejudice*

"The final factor the Court must consider is whether the non-defaulting parties would be prejudiced if the motion for default were to be denied." *Id.* at 148. Denying a motion for default is prejudicial to the plaintiffs where "'there are no additional steps available to secure relief.'" *Id.* (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).

In light of Defendants' failure to respond to both Plaintiffs' and the Court's notices, "there is no indication that requiring Plaintiffs to take further steps . . . would be effective in eliciting a response from Defendants." *Duce Constr. Corp.*, 2003 WL 1960584, at *3. The Court therefore finds that Plaintiffs would be unfairly prejudiced by denial of the motion for default.

All three factors weigh in favor of default. Seeing no other equitable reason for denying Plaintiffs' motion, the Court recommends entering a default judgment against Defendants.

### B. Liability

Plaintiffs have also adequately alleged Defendants' liability in this matter. Specifically, Plaintiffs allege that Defendants (1) violated their obligations under ERISA and the CBA by failing to make contributions to the ERISA-covered funds,[5] and

---

[5] The ERISA-covered funds in this action are the Pointers, Cleaners & Caulkers Welfare, Pension & Annuity Funds, the Bricklayers Joint Apprentice Training Fund, the Bricklayers & Trowel Trades International Pension Fund, and the International Masonry Institute. *See* Am. Compl., ECF 36, ¶¶ 4–5, 7–9.

(2) breached the CBA by failing to make contributions to the non-ERISA funds[6] and remit supplemental dues payments to the Union. *See generally* Am. Compl., ECF 36. The Court addresses these claims in turn.[7]

1. *ERISA Violations*

Plaintiffs allege that Defendants violated ERISA by failing to make required contributions to the ERISA-covered funds. The Court finds that Plaintiffs' allegations sufficiently establish Defendants' liability on this claim. Under Section 515 of ERISA,

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145; *see also id.* § 1132(g)(2) (stating, *inter alia*, that if there is a judgment in favor of a "fiduciary for or on behalf of a plan" seeking to enforce Section 515, "the

---

[6] The non-ERISA funds in this action are the Labor Management Relations Fund and the Promotion Fund. *See* Am. Compl., ECF 36, ¶ 6.

[7] The Court notes that the amended complaint alleges that Islam and Munna violated New York's Lien Law, Article 3-A, by neglecting their fiduciary duties established by that statute, which imposes a trust on funds dedicated to an improvement of a parcel of real property. *See* Am. Compl., ECF 36, ¶¶ 96–98, 116, 132–33. However, the Court observes that Plaintiffs' memorandum of law in support of their motion for a default judgment does not reference these claims, nor does it cite any authority to illustrate what additional relief would flow from a finding that Islam and Munna violated this law. *See generally* Pls.' Mem., ECF 50. What is more, courts in the Second Circuit have held that various sections of the New York Lien Law are preempted by ERISA because, under the Supreme Court's holding in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, they create an "alternative enforcement mechanism[]" that contravenes the intent of the nationally uniform employee-benefits regulatory scheme Congress devised with the passage of ERISA. 514 U.S. 645, 658 (1995); *see Plumbing Indus. Bd., Plumbing Loc. Union No. 1 v. E. W. Howell Co.*, 126 F.3d 61, 68–69 (2d Cir. 1997) (finding Section 5 of the Lien Law preempted); *EklecCo v. Iron Workers Locs. 40, 361, & 417 Union Sec. Funds*, 170 F.3d 353, 356–57 (2d Cir. 1999) (finding same for Section 3). In light of Plaintiffs' lack of argument in support of a finding that Islam and Munna are liable under the Lien Law, the Court deems these claims to have been abandoned. *See Kovaco v. Rockbestos-Suprenant Cable Corp.*, 834 F.3d 128, 143–44 (2d Cir. 2014) (holding that a moving party abandons claims not advanced in motion papers); *see also Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) (same for non-moving party's partial responses to a motion).

14

court shall award the plan . . . the unpaid contributions," as well as "interest on the unpaid contributions, [and] liquidated damages" according to the "rate provided under the plan"). Relatedly, Section 301 of the LMRA provides a federal cause of action for "violation[s] of contracts between an employer and a labor organization representing employees . . . or between any such labor organizations." 29 U.S.C. § 185(a). Where an employer fails to make required contributions, plan fiduciaries can bring a civil action to enforce the terms of the CBA. *See* 29 U.S.C. § 1132(a)(3).

Plaintiffs have adequately alleged their entitlement to such relief as to Defendant R.Z. United. As alleged in the amended complaint, R.Z. United is an employer in an industry affecting commerce as defined by ERISA, and the Funds are multiemployer plans governed by ERISA to which R.Z. United was obligated to contribute under the CBA.[8] *See* Am. Compl., ECF 36, ¶¶ 4, 7, 9, 13, 16, 22. This action was brought by fiduciaries of the Funds, *i.e.*, their trustees. *See id.* ¶¶ 4, 7, 9. Specifically, Plaintiffs have alleged that R.Z. United failed to make required contributions during the relevant period: January 1, 2019, through December 31, 2022. *See id.* ¶¶ 63, 81–82. While these allegations went formally unrebutted as Defendants failed to answer the amended complaint, during Defendant Islam's initial participation in the discovery process, he furnished at least some of the records necessary for Plaintiffs' auditors to prepare the

---

[8] "An ERISA 'employer' is defined as 'any person acting directly as an employer, or indirectly in the interest of an employer in relation to an employee benefit plan.'" *Silverman v. Teamsters Loc. 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 285 (2d Cir. 2014) (quoting 29 U.S.C. § 1002(5)). "The term 'multiemployer plan' means a plan — (i) to which more than one employer is required to contribute, (ii) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer, and (iii) which satisfies such other requirements as the Secretary [of Labor] may prescribe by regulation." 29 U.S.C. § 1002(37)(A).

D&O Schedule, illustrating the alleged delinquencies. *See* Jan. 4, 2024 ECF Min. Entry & Order; Mar. 5, 2024 ECF Min. Entry & Order; Duravcevic Aff., ECF 48, ¶¶ 6–14. Defendants R.Z. United and Neelam then submitted written objections to the D&O Schedule, allowing Kobgo to issue an audit report after investigating and verifying the audit objections, in consultation with the Trustees. *See* Duravcevic Aff., ECF 48, ¶ 9; *see generally* Duravcevic Aff., Ex. K ("Audit Report"), ECF 48-2. Given that Plaintiffs have alleged detailed facts in the amended complaint from which to infer R.Z. United's failure to remit the contributions required by the CBA, the Court respectfully recommends finding that Plaintiffs have sufficiently alleged R.Z. United's liability as to the ERISA claims.[9]

As to Individual Defendants Islam and Munna, Plaintiffs have also adequately alleged their personal liability as signatories to the CBA. When Islam and Munna signed the CBA, which renews automatically year to year in the absence of notification of termination, they agreed to be "personally bound by and to assume all obligations of the Company provided for in the Agreement." Am. Compl., ECF 36, ¶ 31 (quotation marks omitted); *see id.* ¶¶ 37–38; *see also* Argila Aff., ECF 47, ¶¶ 7–9; Argila Aff., Ex. C, ECF 47-3, at ECF p. 2; Pls.' Mem., ECF 50, at 8–9. Because contributing to the ERISA plans is one of R.Z. United's "obligations" under the CBA, and Islam and Munna

---

[9] The Court notes that Plaintiffs' claims are timely. "In lieu of an ERISA-specific limitations period, courts normally apply the limitations period specified 'in the most nearly analogous state limitations statute,'" *i.e.*, New York's six-year statute of limitations for contract actions. *Landry v. Metro. Life Ins. Co.*, No. 19-CV-3385 (KPF), 2021 WL 848455, at *7 (S.D.N.Y. Mar. 5, 2021) (quoting *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009) (per curiam) (citing N.Y. C.P.L.R. § 213)). The same statute of limitations applies to ordinary LMRA claims. *See O'Hare v. Gen. Marine Transp. Corp.*, 740 F.2d 160, 167–68 (2d Cir. 1984); *see also Del Turco v. Speedwell Design*, 623 F. Supp. 2d 319, 338–41 (E.D.N.Y. 2009). Plaintiffs' claims fall well within the applicable six-year period.

agreed to assume all such obligations, the Court respectfully recommends finding Islam and Munna personally liable as to Plaintiffs' ERISA claims against R.Z. United.

2.  *Breach of the CBA*

Plaintiffs allege that Defendants also breached the CBA by failing to remit union dues and assessments deducted from employees' wages to Local 1, and by failing to remit contributions due to the Labor Management Relations Fund and the Promotion Funds, two plans not governed by ERISA. *See* Am. Compl., ECF 36, ¶¶ 6, 19, 63, 92, 94, 110–17, 138–41. As mentioned above, the LMRA authorizes suit in federal court "for violation[s] of contracts between an employer and a labor organization representing employees."[10] 29 U.S.C. § 185(a). Accordingly, where an employer violates the terms of a CBA, a "labor organization may sue . . . in behalf of the employees whom it represents." *Id.* § 185(b).

Plaintiffs have adequately alleged their entitlement to relief under the LMRA. Per the allegations in the amended complaint, the Union is a qualifying labor organization, the CBA is a contract between the Union and Defendants (all of which are employers), and Defendants were bound by the CBA at all relevant times. Am. Compl., ECF 36, ¶¶ 10, 20, 26, 29–38, 42. The amended complaint also alleges that, although Defendants were obligated under the CBA to pay "a portion of its employees' wages in the form of dues and various assessments for all employees performing work covered" by the CBA, Defendants failed to make required payments. *Id.* ¶¶ 50, 63. The amended

---

[10] A "'labor organization' means any organization . . . in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 152(5).

complaint further alleges that the CBA required Defendants to periodically turn over its books and records for inspection and review and to pay audit costs if found delinquent, and that it failed to do so. *Id.* ¶¶ 53–54, 63. Based on these allegations, the Court recommends finding that Plaintiffs have adequately established Defendants' liability for breaching the CBA in this default posture.

## III. Damages

Having found that Defendants' default constitutes an admission of liability with respect to Plaintiffs' ERISA and LMRA claims and that entry of default is warranted, the Court now determines the appropriate damages. *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (explaining that although the allegations in a complaint related to liability are deemed admitted upon entry of a default judgment, a default "'is not considered an admission of damages'" (quoting *Greyhound Exhibitgroup*, 973 F.2d at 158)). "The court must determine the amount of damages, actual or statutory, that may be assessed," and "ensure that there is a reasonable basis for the damages specified in a default judgment." *Santillan v. Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011).

"Section 502 of ERISA sets forth the damages that are recoverable for an employer's failure to remit contributions as required by Section 515 of ERISA." *Finkel v. Colony Elec. Co., Inc.*, No. 10-CV-2240 (FB) (LB), 2010 WL 5665042, at *4 (E.D.N.Y. Nov. 8, 2010), *report and recommendation adopted*, 2011 WL 346738 (E.D.N.Y. Feb. 1, 2011). It provides as follows:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan —

18

(A)   the unpaid contributions,

(B)   interest on the unpaid contributions,

(C)   an amount equal to the greater of —

(i)   interest on the unpaid contributions, or

(ii)   liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D)   reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E)   such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). For LMRA claims, plaintiffs may only recover the damages provided for in the contract itself. *See Finkel*, 2010 WL 5665042, at *4. Here, Plaintiffs assert that they are entitled to delinquent ERISA contributions and non-ERISA contributions, plus prejudgment interest and liquidated damages. Plaintiffs also request attorneys' fees, costs, and auditor's fees. The Court recommends awarding damages as follows.

### A. Unpaid ERISA and Non-ERISA Contributions

The CBA requires Defendants to make contributions to the ERISA Funds at rates corresponding to the covered employees' work shifts. *See* Argila Aff., ECF 47, ¶¶ 15–18; 2015 CBA, ECF 47-1, Arts. XIII § 12, XVIII § 6, at ECF pp. 15–16 (mechanics), 23 (apprentices); 2019 CBA, ECF 47-2, Arts. XIII § 12, XVIII § 6, at ECF pp. 15–16 (mechanics), 24 (apprentices); Argila Aff., Ex. G ("Pay Schedule"), ECF 47-7. These contributions were to be automatically deducted from employees' wages. *See generally* Pay Schedule, ECF 47-7. The CBA likewise obligates Defendants to make contributions to the non-ERISA funds at rates corresponding to the covered employees' work shifts,

19

in amounts deducted from employees' wages, and to deduct dues and assessments from employees' wages and remit them to the Union. *Id.*

Plaintiffs have submitted an affidavit from the payroll audit manager for the accounting firm that audited Defendant R.Z. United's payroll records from January 1, 2019, to December 31, 2022, as well as the June 13, 2024 report generated after the audit. *See generally* Audit Report, ECF 48-2. The report indicates that, out of a total of 13,097.56 hours worked across ten projects during the three-year audit period, under which PCC Fund payments were due to the Union, Defendants only reported 4,939 hours worked, leaving 8,158.56 unreported hours for which associated ERISA and non-ERISA contributions were not remitted to the Union. *See id.* The report further indicates that, out of a total of 21,685.06 hours worked across 13 projects during the same period, under which payments were due to the International Funds, Defendants only reported 4,353.5 hours worked, leaving 17,331.56 hours for which associated ERISA and non-ERISA contributions were not remitted to the International Funds. *See id.* By multiplying the differences between hours reported and hours worked on the various projects by the applicable benefit rates,[11] the payroll audit manager originally assessed the total delinquency at $295,963.22. *See id.*, at ECF p. 4; Duravcevic Aff., ECF 48, ¶¶ 11, 14. Following the Court's order that Plaintiffs review the calculations in support of their motion for a default judgment, Plaintiffs submitted a supplemental declaration, representing that Plaintiffs' counsel and Kobgo corrected various discrepancies in the

---

[11] The applicable benefit rates are reproduced in the Pay Schedule, ECF 47-7. The total benefit rate, across the 13 fringe benefit funds at issue, which serves as the basis for calculating the delinquency, was $27.64 from July 1, 2018, to June 30, 2019; $28.91 from July 1, 2019, to June 30, 2020; $29.84 from July 1, 2020, to June 30, 2021; $31.03 from July 1, 2021, to June 30, 2022; and $31.22 from July 1, 2022, to June 30, 2023.

amounts due under the audit. Dec. 15, 2025 ECF Order; Morgan Suppl. Decl., ECF 52, ¶¶ 9–12 (representing that although Kobgo was not able to locate the exact source of all the discrepancies, they are most likely due to rounding errors across the various calculations). Plaintiffs' revised delinquency spreadsheet indicates a total delinquency of $295,961.78, comprising $266,983.44 in delinquent contributions and $28,978.34 in delinquent dues. Revised Delinquency Spreadsheet, ECF 52-1, at ECF p. 1.

As discussed above, Defendants Neelam, Vigilant Insurance Company, Zoria Housing LLC, and Doe Surety have settled Plaintiffs' claims against them for, in total, $253,251.78. *See* Argila Aff., ECF 47, ¶ 31; Argila Aff., Ex. H, ECF 47-8 (Neelam/Vigilant Insurance Company settlement check for $214,499.54); Pls.' Status Report, ECF 42; Jan. 29, 2025 ECF Order; Notice of Voluntary Dismissal, ECF 45; Argila Aff., Ex. I, ECF 47-9 (Zoria Housing LLC settlement check for $38,752.24). *But see* Revised Delinquency Spreadsheet, ECF 52-1, at ECF p. 1 (asserting that the amount paid stands at $253,251.84). Based on Plaintiffs' revised calculations, the balance of the delinquency is **$42,709.94**, comprising $39,177.09 in unpaid contributions owed to the Funds and $3,532.85 in unpaid dues and assessments owed to the Union. *Id.* Plaintiffs allege that under both ERISA and the CBA, Defendants are required to pay this balance. *See* Argila Aff., ECF 47, ¶¶ 24–25; Am. Compl., ECF 36, ¶¶ 60–61; 29 U.S.C. § 1132(g)(2)(a); *see generally* 2015 CBA, ECF 47-1; 2019 CBA, ECF 47-2.

Courts in the Second Circuit may rely on audits or auditor's reports for calculating damages, but must examine whether the auditor's assumptions and techniques were "reasonable." *Bricklayers Ins. & Welfare Fund v. Doran Tatrow Assocs., Inc.* ("*Doran Tatrow Assocs.*"), No. 18-CV-2475 (RJD) (ST), 2021 WL 7208997, at *4 (E.D.N.Y. Mar. 15, 2021) (quotation marks omitted) (collecting cases), *report and*

21

*recommendation adopted*, Apr. 8, 2021 ECF Order Adopting R. & R., *appeal dismissed*, ECF 42.

Here, Kobgo prepared a preliminary D&O Schedule based on available information, while attempting to obtain outstanding records necessary to prepare a full audit (including payroll tax records, trial balance and general ledger reports, and a complete set of certified payroll records). *See* Duravcevic Aff., ECF 48, ¶¶ 5–8; Morgan Decl., ECF 49, ¶¶ 28–35. After discovering that R.Z. United did not maintain a trial balance or general ledger, Kobgo instead reviewed all the bank statements associated with R.Z. United's accounts during the period of the audit, as well as cancelled checks from those banks. Duravcevic Aff., ECF 48, ¶ 10; Morgan Decl., ECF 49, ¶¶ 37–38, 40–41, 44; Pls.' Status Report, ECF 25. Kobgo also examined R.Z. United's "earning records, payroll tax records, paystubs," "certified payroll reports submitted by R.Z. to NYCHA for work performed on various NYCHA projects," and the Funds' shop steward reports, then reconciled the hours Local 1 workers worked with the reported benefit hours, multiplying the difference by the applicable benefit rates to arrive at a delinquency associated with specific projects, or, where the projects were unidentifiable, a "[m]iscellaneous" schedule. Duravcevic Aff., ECF 48, ¶¶ 13–15.

Although the Court has discovered some errors in Plaintiffs' submissions, as discussed further below, overall, the Court is satisfied with Kobgo's methodology for preparing the reports, and finds it "reasonable" in light of the information available to

the auditors.[12] *Doran Tatrow Assocs.*, 2021 WL 7208997, at \*4–5 (finding auditor's methodology reasonable where, as here, payroll records were incomplete). Consequently, the Court recommends awarding **$42,709.94** in unpaid contributions and dues to Plaintiffs.

### B. Prejudgment Interest

#### 1. *Delinquent ERISA and Non-ERISA Contributions*

ERISA states that "interest on unpaid contributions shall be determined by using the rate provided under the plan," if any. 29 U.S.C. § 1132(g)(2). The CBA provides that a delinquent employer is liable for interest at a rate of 10 percent of the amount owing to both the ERISA and non-ERISA plans, "or at the maximum legal rate, whichever is

---

[12] While the Court has not verified every calculation in Plaintiffs' "detailed and voluminous submissions," the Court has reviewed the detailed spreadsheets and original audit report to confirm that the delinquency spreadsheet covers the same time periods analyzed by the audit, that the number of hours for the pertinent periods match as between the audit and the delinquency calculations, and that the due dates for each period are properly entered. *Bricklayers Ins. & Welfare Fund v. Alpha Omega Bldg. Corp.*, No. 19-CV-2600 (ERK) (RLM), 2022 WL 18858966, at \*7 n.13 (E.D.N.Y. Nov. 10, 2022) (performing selective audit of the plaintiff's calculations), *report and recommendation adopted*, Nov. 30, 2022 ECF Order Adopting R. & R.; *see also* Morgan Suppl. Decl., ECF 52, ¶¶ 9–13 (describing the process by which Plaintiffs' counsel and the auditor attempted to identify the source of an approximately 14 to 20 cent discrepancy in the total delinquency and proposing that the Court use its discretion to rectify it). In addition, the Court has performed its own analysis of countless line entries across the spreadsheets and is satisfied that Kobgo properly determined the amount of contributions owed unless otherwise indicated. *See Alpha Omega Bldg. Corp.*, 2022 WL 18858966, at \*7 n.13.

For example, on the supporting schedule of payroll omissions due to the PCC Funds for the Melrose House project, the audit report reflects 106 unreported hours from July 1, 2018, through June 30, 2019. *See* Audit Report, ECF 48-2, at ECF p. 14. The benefit rate for the Welfare Fund was $8.14 at that time. *Id.* at 14; *accord* Pay Schedule, ECF 47-7, at ECF p. 2. Multiplying the applicable benefit rate ($8.14) by the unreported hours (106) arrives at $862.84, which is reflected on the audit report. *See* Audit Report, ECF 48-2, at ECF p. 14. For another example, on the supporting schedule of payroll omissions due to the I.M.I. Fund for the Grant House project, the audit report reflects 476 unreported hours from July 1, 2020, through June 30, 2021. *See id.*, at ECF p. 30. The benefit rate for the I.M.I. Fund was $0.80 at that time. *Id.*; *accord* Pay Schedule, ECF 47-7, at ECF p. 4. Multiplying the applicable benefit rate ($0.80) by the unreported hours (476) comes to $380.80, which is the number reflected on the audit report. *See* Audit Report, ECF 48-2, at ECF p. 30.

greater." 2015 CBA, ECF 47-1, Art XV § 7(e), at ECF pp. 18–19; *see* Argila Aff., ECF 47, ¶ 24. With regard to the non-ERISA funds, because the LMRA allows labor unions "to sue in federal court for breaches of state-law labor contracts," generally, the nine-percent annual interest rate under New York C.P.L.R. section 5004 is "appropriate" when calculating prejudgment interest on non-ERISA contributions. *Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Eng'rs, Loc. 14-14B ex rel. Christian v. Superior Site Work, Inc.* ("*Christian*"), No. 15-CV-0543 (MKB), 2017 WL 639248, at *8 (E.D.N.Y. Feb. 16, 2017) (citing 29 U.S.C. § 185(a)). However, where, as here, the parties agreed to award additional amounts upon the employer's failure to remit payment, they should be bound to the terms of their agreement. *Cf. N.Y.C. Dist. Council of Carpenters Pension Fund v. Dafna Constr. Co.*, 438 F. Supp. 2d 238, 242 (S.D.N.Y. 2006) (declining to vacate an arbitrator's decision that drew "its essence from the collective bargaining agreement") (quotation marks omitted). Because the CBA here allows an interest rate of 10 percent or the nine-percent Section 5004 rate, "whichever is greater," the annual 10 percent rate prescribed in the CBA applies when calculating the interest associated with both the delinquent ERISA and non-ERISA contributions. *See Bricklayers Ins. & Welfare Fund v. Precise Brick, Inc.*, No. 08-CV-4362 (CBA) (CLP), 2009 WL 4891821, at *6–7 (E.D.N.Y. Dec. 17, 2009) (allowing 10 percent prejudgment interest rate on delinquent non-ERISA contributions based on the CBA's terms).

Plaintiffs have used the following formula to calculate prejudgment interest with respect to the unpaid contributions owed: (amount due) x (interest rate per diem, expressed as 0.1/365 or 0.0002739726) x (number of days payments were or are delinquent). Morgan Decl., ECF 49, ¶¶ 67–74; *see also generally* Revised Delinquency Spreadsheet, ECF 52-1. The CBA specifies that the date on which the payments become

24

due is the 15th of the month following the month in which the hours were worked. *See* Argila Aff., ECF 47, ¶ 17; 2015 CBA, ECF 47-1, Art. XV, at ECF p. 17. For delinquencies that have been settled by the Neelam or Zoria settlement payments, Plaintiffs calculated the interest due only through the date of those payments (September 9, 2024, and January 21, 2025, respectively); for the delinquencies associated with the Manhattanville project and other miscellaneous projects completed by R.Z. United on which the principal balance is still outstanding, the interest was calculated through December 31, 2025. *See* Morgan Decl., ECF 49, ¶¶ 77–91 (basing interest calculations on erroneous accrual dates); Morgan Suppl. Decl., ECF 52, ¶¶ 5, 8 (correcting errors); Revised Delinquency Spreadsheet, ECF 52-1. Applying the 10 percent rate from the last date of each contribution period and through either the date of payment or December 31, 2025, Plaintiffs seek $108,918.88 in interest, representing $107,826.94 in interest on ERISA contributions with the remaining $1,091.94 in interest on non-ERISA contributions. *See* Morgan Suppl. Decl., ECF 52, ¶¶ 14–17; Revised Statement of Damages, ECF 52-2.

The Court recommends an award of prejudgment interest through the date of judgment, using the methodology Plaintiffs propose. The Court has reviewed Plaintiffs' revised delinquency spreadsheet and notes that the concerns identified in its December 15, 2025 ECF Order regarding errors in the prejudgment interest calculation have largely been addressed; that is, Plaintiffs have corrected nearly all of the errors the Court identified, and Plaintiffs' submission of their calculations in an Excel spreadsheet format has allowed the Court to verify whether Plaintiffs' calculations are accurate. *See generally* Revised Delinquency Spreadsheet, ECF 52–1; *see* Morgan Suppl. Decl., ECF 52, ¶¶ 3–8 (describing the process of correcting Plaintiffs' calculations).

That said, although the Court *specifically* identified certain errors related to the calculation of interest associated with the L.I. Baptist project in its December 15, 2025 ECF Order, the revised calculations submitted by Plaintiffs remain inaccurate. *See* Dec. 15, 2025 ECF Order. In particular, the spreadsheet represents that there were delinquent contributions associated with the October 2019, November 2019, and May 2020 pay periods, where the revised audit report states that the delinquencies only began with the November 2020 pay period. *Compare* Revised Delinquency Spreadsheet, ECF 52-1, at ECF p. 4, *with* Revised Audit, ECF 48-2, at ECF pp. 11 (PCC Funds), 33 (International Funds). While Plaintiffs' calculation of the underlying principal, which was paid by Defendant Neelam on September 9, 2024, was correct, the data entry errors inflated the number of days that payment was overdue, which impacts the calculation of interest. *See* Revised Delinquency Spreadsheet, ECF 52-1, at ECF p. 4. Similarly, the revised spreadsheet represents that ERISA contributions to the International Funds associated with the December 2020 pay period became due on December 15, 2019, not January 15, 2021, rendering the number of days overdue 1,730 instead of 1,333. *See id.*

Although it is not the Court's function to "recalculate and reconstruct damages based on what evidence is presented," the Court's independent calculations, accounting for all of these errors, indicate that the correct amount of interest on the delinquent contributions associated with the L.I. Baptist project is $17,683.41, not $20,266.48.[13] *Trs. of Loc. 7 Tile Indus. Welfare Fund v. Castle Stone & Tile, Inc.*, No. 17-CV-3187 (NGG) (RER),

---

[13] Attached to this Report and Recommendation is an appendix, which includes the Court's recalculation of the L.I. Baptist page of Plaintiffs' revised delinquency spreadsheet. *See* Appendix, ECF 53-1.

2022 WL 2063267, at *15 (E.D.N.Y. June 8, 2022) (quotation marks omitted); *see* Revised Delinquency Spreadsheet, ECF 52-1, at ECF p. 4.

The Court accordingly recommends granting Plaintiffs' requested prejudgment interest, reduced in the amount of $2,583.07 in light of the Court's recalculation, for a total amount of $106,335.81, representing $105,271.93 in interest on ERISA contributions and $1,063.88 on non-ERISA contributions.

Plaintiffs also propose that additional prejudgment interest on the ERISA and non-ERISA contributions be calculated at a per diem rate of 0.0002739726, which is a 10 percent annual interest rate converted to a daily rate. *See* Morgan Suppl. Decl., ECF 52, ¶ 21; *see also* Morgan Decl., ECF 49, ¶¶ 77, 81, 91 (explaining that interest is calculated from the date the payments are due through the date they are paid, and that no payments were made for the delinquencies associated with Manhattanville or Miscellaneous (R.Z.)). Accordingly, the Court recommends awarding additional prejudgment interest at a rate of $10.73 per day,[14] calculated from January 1, 2026, through the date that the Clerk of Court enters final judgment, on the $39,177.09 in outstanding delinquent contributions. *See* Revised Delinquency Spreadsheet, ECF 52-1, at ECF p. 1.

2.  *Delinquent Dues and Assessments*

As discussed, the nine percent rate under New York C.P.L.R. section 5004 is appropriate for calculating prejudgment interest on non-ERISA contributions not otherwise provided for, including dues and assessments owed to the Union. *Christian*, 2017 WL 639248, at *8. Where the "damages 'were incurred at various times,'" courts

---

[14] $39,177.09 (delinquent contribution amount) x 0.0002739726 = $10.73.

may compute interest "'from the date [they were] incurred or upon all of the damages from a single reasonable intermediate date.'" *Id.* (quoting N.Y. C.P.L.R. § 5001(b)).

Here, Defendants were delinquent in remitting $3,532.85 in dues and assessments to the Union from January 1, 2019, to December 31, 2022. Revised Delinquency Spreadsheet, ECF 52-1, at ECF p. 1. Plaintiffs calculated interest on these damages using the following formula: (amount due) x (interest rate per diem, expressed as 0.09/365 or 0.0002465753) x (number of days payments were or are delinquent), for a total of $10,241.42. *See* Morgan Suppl. Decl., ECF 52, ¶ 19.

However, Plaintiffs' calculations with respect to the delinquent International and PCC dues associated with the L.I. Baptist project are not accurate. As discussed above, the relevant periods at issue and due dates in the L.I. Baptist calculations were inaccurate, impacting the calculation of the days the payments were overdue. *See* Revised Delinquency Spreadsheet, ECF 52-1, at ECF p. 4 (representing that for the March 2020, May 2020, December 2020, January 2021, April 2021, and May 2021 periods, the due dates were February 15, 2021, March 15, 2021, April 15, 2021, May 15, 2021, June 15, 2021, and July 15, 2021, respectively). The Court has independently calculated that the total interest on the delinquent dues related to L.I. Baptist is $1,164.08,[15] and that the

---

[15] Using Plaintiffs' "days out" calculation, based on the corrected pay period and due date, multiplying the number of days out by the nine percent annual C.P.L.R. rate converted to a per diem rate and the amount owed with respect to the International dues is as follows:

28

total interest on the delinquent dues and assessments is $10,082.30. *Compare* Revised Delinquency Schedule, ECF 52-1, at ECF p. 4, with Appendix, ECF 53-1, at 1, 3.

Accordingly, the Court recommends an award of prejudgment interest on the delinquent dues and assessments in the amount of $10,082.30. In addition, the Court recommends awarding prejudgment interest at a per diem rate of $0.87,[16] calculated from January 1, 2026, through the date that the Clerk of Court enters final judgment, on the $3,532.85 in outstanding delinquent dues and assessments. *See* Revised Delinquency Spreadsheet, ECF 52-1, at ECF p. 1.

### C. Liquidated Damages

Plaintiffs also request liquidated damages, as permitted under ERISA. *See* 29 U.S.C. § 1132(g)(2)(C). ERISA permits an award of liquidated damages in "an amount equal to the greater of . . . interest on the unpaid contributions," *id.* § 1132(g)(2)(C)(i), or "'an amount not in excess of 20 percent'" of the unpaid contributions "as of the day the

| Period | Due Date | Date of Pay | Days Out | Per Diem Rate | Amount Due | Interest |
|--------|----------|-------------|----------|---------------|------------|----------|
| Nov-20 | 12/15/20 | 09/09/24 | 1364 | 0.0002465753 | $288.00 | $96.86 |
| Dec-20 | 01/15/21 | 09/09/24 | 1333 | 0.0002465753 | $306.45 | $100.72 |
| Jan-21 | 02/15/21 | 09/09/24 | 1302 | 0.0002465753 | $144.90 | $46.52 |
| Feb-21 | 03/15/21 | 09/09/24 | 1274 | 0.0002465753 | $43.20 | $13.57 |
| Mar-21 | 04/15/21 | 09/09/24 | 1243 | 0.0002465753 | $241.20 | $73.93 |
| Apr-21 | 05/15/21 | 09/09/24 | 1213 | 0.0002465753 | $269.10 | $80.49 |
| May-21 | 06/15/21 | 09/09/24 | 1182 | 0.0002465753 | $232.65 | $67.81 |
| Jun-21 | 07/15/21 | 09/09/24 | 1152 | 0.0002465753 | $5.85 | $1.66 |
| | | | | | **TOTAL** | $481.56 |

*See* Appendix, ECF 53-1, at ECF p. 3; *see also id.* at p. 2 (calculation of interest for PCC Local Dues).

[16] $3,532.85 (delinquent dues amount) x 0.0002465753 = $0.87.

action was filed." *Atl. Steel Sols., LLC*, 2022 WL 4642735, at *7 (quoting 29 U.S.C.

§ 1132(g)(2)(C)(ii)). The CBA provides for a 20 percent liquidated damages award where

the employer does not timely remit contributions, an audit reveals a deficiency, legal

counsel assists in collection, and litigation is initiated. *See* Am. Compl., ECF 36, ¶ 61;

Argila Aff., ECF 47, ¶ 25; 2015 CBA, ECF 47-1, at ECF pp. 18–19; 2019 CBA, ECF 47-2, at

ECF p. 19. This remedy is within the liquidated damages allowed under ERISA. *See* 29

U.S.C. § 1132(g)(2)(C)(ii).

Here, Plaintiffs request liquidated damages equal to the amount of the interest

on the delinquent ERISA contributions ($105,271.93) because this sum is larger than 20

percent of the amount of ERISA contributions found to be late-paid or due as a result of

the audit and subsequent recalculations.[17] *See* Revised Delinquency Schedule, ECF 52-1,

at ECF p. 1; Morgan Suppl. Decl., ECF 52, ¶ 17. Because the interest on the delinquent

contribution amount is larger than 20 percent of the late-paid or due ERISA

contribution amounts, the Court finds that Plaintiffs have established their entitlement

to liquidated damages on Defendants' unpaid ERISA contributions in the amount of

**$105,271.93**.[18] 29 U.S.C. § 1132(g)(2)(C)(i); *see Gesualdi v. Burtis Constr. Co.*, No. 20-CV-

---

[17] As discussed above, because of an error in calculating the amount of interest on delinquent ERISA contributions associated with the L.I. Baptist project, the Court independently calculated that the correct amount is $105,271.93, not Plaintiffs' requested amount, $107,826.94.

[18] As the Second Circuit has observed, § 1145 of ERISA requires employers to make plan contributions in accordance with the terms of the plan or applicable CBA, so even when ERISA contributions are paid late, in the event of a "judgment in favor of the plan" under § 1132(g)(2)

4864 (ARR) (ARL), 2021 WL 6550952, at *4 (E.D.N.Y. Dec. 28, 2021), *report and recommendation adopted*, 2022 WL 173548 (E.D.N.Y. Jan. 19, 2022); *Trs. of Bldg. Trades Educ. Benefit Fund v. Laura Elec. Lighting & Maint. Serv. Inc.*, No. 20-CV-3700 (DRH) (JMW), 2021 WL 6294391, at *4 (E.D.N.Y. Dec. 14, 2021), *report and recommendation adopted*, 2022 WL 59655 (E.D.N.Y. Jan. 6, 2022); *Trs. of Bldg. Trades Educ. Benefit Fund v. Culver Elec., LLC*, No. 17-CV-3448 (DRH) (ST), 2021 WL 1911122, at *4 (E.D.N.Y. Apr. 19, 2021), *report and recommendation adopted*, 2021 WL 1906486 (E.D.N.Y. May 12, 2021).

### D. Other Awards

1. *Attorney's Fees*

Although ERISA mandates the recovery of attorney's fees in any successful action to recover delinquent contributions, courts have broad discretion in determining what constitutes a reasonable attorney's fee. *See* 29 U.S.C. § 1132(g)(2)(D); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84, 190 (2d Cir. 2008). In this Circuit, a reasonable attorney's fee is based on a number of factors, including the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, awards given in similar cases, and the experience, reputation, and ability of the attorney. *See Arbor Hill*, 522 F.3d at 186 n.3, 190. Further, under the

---

of ERISA, "the plaintiff is entitled to all the measures of relief not already obtained." *Iron Workers Dist. Council of W. New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1507 (2d Cir. 1995) (quotation marks omitted); *see also id*. at 1506 (observing that other circuits have "held or indicated that an employer cannot escape its statutory liability for interest, liquidated damages or double interest, attorney fees, and costs simply by paying the delinquent contributions before entry of judgment in a § 1132(g)(2) action brought to recover delinquent contributions"). Accordingly, here, the Court assesses interest on both the unpaid and late-paid ERISA contributions. The total amount of delinquent ERISA contributions in this case is in excess of $250,000, 20 percent of which is less than the interest due on the delinquencies. *See* Revised Delinquency Spreadsheet, ECF 52-1, at ECF p. 1; *see generally id*.

31

"forum rule," courts typically assess an attorney's requested hourly rate by comparison to other rates awarded in the district in which the reviewing court sits. *See Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174–76 (2d Cir. 2009).

Once a court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended to determine the presumptively reasonable fee. *See Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" (quoting *Arbor Hill*, 522 F.3d at 183). With very limited exceptions, requests for attorney's fees in the Second Circuit "should normally be disallowed unless accompanied by contemporaneous time records." *Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014) (quotation marks omitted); *see also Finkel*, 970 F. Supp. 2d at 127. Whether the hours expended on a matter are reasonable is a separate inquiry from the reasonableness of the hourly rate, and should be scrutinized with the same care. *See Bay Park Ctr. for Nursing & Rehab. LLC v. Philipson*, 659 F. Supp. 3d 312, 317–18 (E.D.N.Y. 2023).

In this case, counsel seeks $80,432.50 in attorneys' fees for 357.9 hours billed since March 1, 2023. *See* Morgan Decl., ECF 49, ¶¶ 99, 104–13, 116; Attorney Time Records, ECF 49-17, at ECF p. 2; *see also* Morgan Suppl. Decl., ECF 52, ¶ 20 (noting that Plaintiffs' attorneys' fee request is unchanged following counsel's supplemental submissions). Based on contemporaneous billing records, this case has been worked on by two partners, three associates, one law clerk, one former paralegal, and three former interns. *See* Morgan Decl., ECF 49, ¶¶ 99, 107–11. Counsel contends that a "significant portion of the attorneys' fees and costs in this case are attributable to Plaintiffs' efforts to facilitate

32

the completion of the Audit," including participation in initial discovery, as well as Plaintiffs' efforts to reach settlement agreements with the various Defendants. *Id.* ¶¶ 100–01. Plaintiffs' counsel represents that Plaintiffs and the law firm with which counsel was associated at the time of filing of this motion[19] agreed to services at the hourly rates reproduced in the following table:

| | Mar. 1, 2023 – Dec. 31, 2023 | Jan. 1, 2024 – Apr. 18, 2025 |
|---|---|---|
| **Partners** | $285.00 | $305.00 |
| **Associates with three or more years of experience** | $245.00 | $255.00 |
| **Associates with less than three years of experience** | $215.00 | $225.00 |
| **Juris Doctors** | $155.00 | $165.00 |
| **Law clerks and paralegals** | $95.00 | $105.00 |

Morgan Decl., ECF 49, ¶¶ 112–13; *see generally* Attorney Time Records, ECF 49-17.

Here, the Court respectfully recommends awarding fees based on the requested hourly rates. The Court agrees that counsel's hourly rates are reasonable given similar rates awarded in this context. Plaintiffs represent that these hourly rates are "consistent with or below" the billing rates at comparable firms handling similar litigation. Morgan Decl., ECF 49, ¶ 105; *see* Pls.' Mem., ECF 50, at 17–18. "In ERISA cases, attorney's fees have been awarded in the Eastern District of New York at an hourly rate of $300.00 to $450.00 for partners, $200.00 to $325.00 for senior associates, $100.00 to $200.00 for junior

---

[19] The Court observes that while Plaintiffs' submissions reflect that, on April 18, 2025, counsel was associated with the firm Holm & O'Hara, counsel is now associated with the firm Pitta LLP. *Compare* Morgan Decl., ECF 49, ¶ 107, *with* Morgan Suppl. Decl., ECF 52, ¶ 1.

associates, and up to $90.00 for non-attorney support staff." *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. IKNA Constr. LLC*, No. 24-CV-0561 (CBA) (JAM), 2025 WL 447731, at *17 (E.D.N.Y. Jan. 15, 2025) (quotation marks omitted), *adopted sub nom. Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. INKA Constr. LLC*, 2025 WL 777108 (E.D.N.Y. Mar. 11, 2025); *see also Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232–33 (2d Cir. 2006) (noting that fee awards must take into account "the current market rate" in the district). *But see Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 242–43 (E.D.N.Y. 2025) (noting that attorney's fees may be adjusted for inflation). The rates outlined above likewise comport with previous fee awards for the same attorneys. *See, e.g., Argila v. Mach Grp., Inc.*, No. 22-CV-4374 (KAM) (MMH), 2024 WL 1007012, at *11–12 (E.D.N.Y. Mar. 8, 2024) (recommending awarding, *inter alia*, Katherine M. Morgan, Carol G. Dell, M. Aliza Chesler, and Elizabeth Shaw's requested hourly rates), *report and recommendation adopted as modified*, 724 F. Supp. 3d 107 (E.D.N.Y. 2024), *on reconsideration in part*, 740 F. Supp. 3d 128 (E.D.N.Y. 2024). Therefore, the Court recommends finding Plaintiffs' requested hourly rates reasonable.

Plaintiffs represent that counsel spent 357.9 hours working on this case. Attorney Time Records, ECF 49-17, at ECF p. 2. The Court notes that this greatly exceeds what courts typically consider reasonable in average ERISA default judgment cases. *See Sullivan v. Champion Elec. Mech. Builders Corp.*, No. 18-CV-5618 (ENV) (RER), 2020 WL 9814085, at *9 (E.D.N.Y. Feb. 25, 2020) (observing that a $32,343 fee request for 149.9 hours of work is "extremely high" in the ERISA default judgment context), *report and recommendation adopted*, Mar. 21, 2020 ECF Order Adopting R. & R.; *Gesualdi v. Reid*, No. 19-CV-4132 (LDH) (VMS), 2021 WL 8316386, at *14 (E.D.N.Y. Aug. 12, 2021) (collecting

34

cases finding a range of 20 to 26 hours spent litigating an ERISA default judgment to be reasonable). The procedural history of this case, however, illustrates that it is "not a typical ERISA default," given Plaintiffs' "extensive efforts to facilitate the audit examination," which was "protracted by R.Z.'s piecemeal production of records and flat-out failure" to maintain a trial balance and general ledger. Pls.' Mem., ECF 50, at 18–19. The Court further observes that Islam appeared in this case periodically, although never hired counsel for Defendant R.Z. United. Sept. 12, 2023 ECF Min. Entry & Order (advising Islam that corporations must be represented by counsel); Letter from Islam, ECF 20 (communicating intent to appear *pro se*); Nov. 13, 2023 ECF Min. Entry & Order (reminding Islam that while he may proceed *pro se*, Defendant R.Z. United is at risk of a default judgment absent the appearance of counsel); Jan. 4, 2024 ECF Min. Entry & Order (appearance by Islam); Mar. 5, 2024 ECF Min. Entry & Order (final appearance by Islam).

In *Argila v. Mach Group, Inc.*, a case involving the same plaintiffs and attorneys, the court awarded $104,163 in attorneys' fees for 451.4 hours of work where the defaulting defendant "bore responsibility for increasing the amount of legal work the plaintiffs' attorneys performed" by ceasing cooperation in the case. *See* 740 F. Supp. 3d at 135. The court also explained that while "a party ordinarily cannot seek attorney fees from one defendant based on work done settling with another defendant," the award was warranted because the non-defaulting defendants were liable for the defaulting defendants' principal delinquency "under the relevant contractual arrangements." *Id.* (citing *Sullivan v. Prestige Stone & Pavers Corp.*, No. 16-CV-3348 (AT) (DF), 2020 WL 2859006, at *12–13 (S.D.N.Y. Feb. 4, 2020), *report and recommendation adopted*, 2020 WL 1528117 (S.D.N.Y. Mar. 30, 2020)). Here, too, the defendants that settled were liable for

35

some of the remaining Defendants' delinquencies, and Islam's ceasing to cooperate fully in the case contributed to the length of this litigation. *See* Pls.' Mem., ECF 50, at 20; Morgan Decl., ECF 49, ¶¶ 50, 55; Argila Aff., ECF 47, ¶¶ 31–32. Due to the "unique complexity and idiosyncrasies of the case," the number of hours expended, in the aggregate, may be "reasonable under the circumstances." *Mach Grp.*, 740 F. Supp 3d at 135.

However, Plaintiffs' filings in support of their request for attorneys' fees lack the detailed information necessary for the Court to determine the overall reasonableness of their requested fee. Specifically, although Ms. Morgan declares that "[t]he recapitulation at the bottom of each monthly bill shows the names of attorneys and paralegals, their hourly rates and the total amount of time billed by each attorney or paralegal for the month," this is not the case for many of the monthly billing records submitted by Plaintiffs. Morgan Decl., ECF 49, ¶ 104. For example, for the month of July 2023, the billing record details each professionals' individual entries for that month, without detailing the total amount billed per person. Attorney Time Records, ECF 49-17, at ECF pp. 12–13. Given the volume of hours entered over the course of this litigation, the absence of such a summary hampers the Court's ability to ascertain how many hours were expended by whom, and whether the distribution of those hours was reasonable in light of the scope of work required in this case.

"Where, as here, the application for fees is voluminous," and the court has had to "expend its own time" re-calculating Plaintiffs' figures accurately, a reduction of the fee to be awarded is appropriate. *Trs. of United Teamster Fund v. J.B. Mufflers, Inc.*, No. 07-CV-1425 (SJ) (RML), 2008 WL 2114955, at *6 (E.D.N.Y. May 19, 2008) (finding a 50 percent reduction in counsel's total fee request appropriate in light of various filing

deficiencies); *see also Gesualdi v. Stallone Testing Lab'ys, Inc.*, No. 10-CV-0646 (ENV) (LB), 2011 WL 2940606, at *1 (E.D.N.Y. July 19, 2011) (same).

At the same time, the Court is mindful that too significant a reduction may work an injustice in the context of a labor-intensive ERISA default. In *Mach Group*, the Honorable Kiyo A. Matsumoto found that a 60 percent fee reduction merited reconsideration "to avoid manifest injustice" and awarded Plaintiffs their full requested fee, even as her order admonished Plaintiffs' counsel for "leaving it entirely to the Court to examine their legal bills for reasonableness." 740 F. Supp. 3d at 134–35. That decision — involving the *same Plaintiffs and counsel* — was issued a mere nine months before Plaintiffs submitted the instant fee request, yet counsel apparently did not heed Judge Matsumoto's guidance.

In light of (1) the repeated errors and inconsistencies across Plaintiffs' filings, requiring the Court to expend its scarce resources to untangle myriad errors to ensure the accuracy of Plaintiffs' calculations; (2) the failure to address all of the calculation errors specifically identified by the Court; (3) the failure to submit sufficiently detailed billing records that would allow the Court to readily analyze the reasonableness of each billing professional's hours, as required by Second Circuit precedent; and (4) the fact that Plaintiffs' counsel had recently been admonished for failing to submit sufficiently detailed billing records prior to when they submitted the instant application, the Court finds that a 10 percent reduction in the requested attorney's fee is appropriate. Accordingly, the Court recommends awarding **$72,389.25** in attorney's fees.

Plaintiffs additionally request that the Court order Defendants R.Z. United, Islam, and Munna to pay "any additional attorneys' fees that accrue in the course of the enforcement of the attached order." Morgan Decl., ECF 49, ¶ 115. Under the terms of

the CBA, Defendants agreed to be liable for attorney's fees "[w]here collection of payment is made pursuant to a judgment against the Employer." *E.g.*, 2015 CBA, ECF 47-1, at ECF p. 19. However, Plaintiffs cite no other authority that would support the Court's award of future attorneys' fees, in an amount that is not yet ascertainable. In the absence of clear case law support and a sensible procedure for awarding "any additional attorneys' fees," and an opportunity to review contemporaneous billing records as to any future fee request, the Court recommends denying this aspect of Plaintiffs' request.

2. *Costs*

"When a prevailing party seeks to recover those costs associated with the prosecution of an action, the court is permitted to award reasonable expenses incurred by the attorneys and charged to clients." *Ret. Fund of Loc. 1482 Paint & Allied Prods. Mfrs. v. N. Adhesives, Inc.*, No. 19-CV-5609 (MKB) (RER), 2020 WL 6370060, at *5 (E.D.N.Y. May 27, 2020) (citing *Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 628 (E.D.N.Y. 2017)), *report and recommendation adopted*, 2020 WL 5587271 (E.D.N.Y. Sept. 17, 2020). Plaintiffs request $1,017.53 in costs related to this action, comprising a $402 filing fee; $150 for service of process on Islam and Munna; $103 for service of process on R.Z. United; $206 for service of process on Zoria Housing LLC; and $115 for costs associated with subpoenas on TD Bank, JP Morgan Chase Bank, and Santander Bank, as well as $41.53 for mailing and other administrative expenses. *See* Morgan Decl., ECF 49, ¶¶ 99, 114; Attorney Time Records, ECF 49-17, at ECF p. 2; Costs, ECF 49-18. The Court finds the majority of these costs to be documented and reasonable, with the exception of the cost for service of process on Zoria Housing LLC. Although this cost is documented, against the backdrop of courts'

38

reluctance to force defaulting defendants to pay for costs associated with defendants who have settled, as discussed above, the Court declines to recommend awarding the $206 cost of service on Zoria Housing LLC. *Cf. Laboratorios Rivas, SRL v. Ugly & Beauty, Inc.*, No. 11-CV-5980 (RA) (JLC), 2013 WL 5977440, at *18 (S.D.N.Y. Nov. 12, 2013) (recommending a 90 percent reduction in costs where the vast majority of costs were associated with the non-defaulting defendants), *report and recommendation adopted*, 2014 WL 112397 (S.D.N.Y. Jan. 8, 2014). Accordingly, the Court recommends awarding **$811.53** in costs.

3.   *Audit Fees*

Plaintiffs also request that Defendants be charged "the full cost of the audit," $8,675.00, positing that "R.Z.'s poor record keeping and failure to cooperate with the audit examination increased the audit costs beyond the usual costs for a payroll compliance audit." Pls.' Mem., ECF 50, at 14; *see generally* Duravcevic Aff., ECF 48. Courts routinely award such fees as a form of "other legal or equitable relief" available under ERISA. 29 U.S.C. § 1132(g)(2)(E); *see King v. JCS Enters., Inc.*, 325 F. Supp. 2d 162, 172 (E.D.N.Y. 2004). The Court also notes that under the CBA, Plaintiffs are "entitled to recoup all audit costs" in the event that litigation is commenced to compel an examination, as occurred here. 2015 CBA, ECF 47-1, Art. XV § 7(b), at ECF p. 18; *see* Am. Compl., ECF 36, ¶ 57; Argila Aff., ECF 47, ¶¶ 26–28. In light of the "substantial amount of work" required to conduct the audit due to R.Z. United's piecemeal and incomplete record production, as discussed above, the Court recommends finding the award of auditor's fees justified. *Sullivan v. A & Z Constr. Co.*, No. 12-CV-2825 (NGG) (MDG), 2016 WL 4991541, at *9 (E.D.N.Y. Mar. 11, 2016), *report and recommendation adopted*, 2016 WL 5061104 (E.D.N.Y. Sept. 16, 2016).

Accordingly, the Court recommends an award of **$8,675.00** for Plaintiffs' audit fees.

### E.  Post-Judgment Interest

Although Plaintiffs here did not specifically request post-judgment interest, the Second Circuit has held that an award of post-judgment interest at the statutory rate prescribed by 28 U.S.C. § 1961(a) is "mandatory." *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004). Section 1961(a) provides that post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a). "Moreover, post-judgment interest 'shall be computed daily [from the date of judgment] to the date of payment.'" *Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, 401(K) Savings Plan v. Temperini Mech. Inc.*, No. 18-CV-2596 (AMD) (LB), 2020 WL 571680, at *3 (E.D.N.Y. Jan. 13, 2020) (alteration in original) (quoting 28 U.S.C. § 1961(b)), *report and recommendation adopted*, 2020 WL 565410 (E.D.N.Y. Feb. 5, 2020). Accordingly, the Court respectfully recommends that post-judgment interest be awarded at the rate set forth in 28 U.S.C. § 1961 on all sums awarded from the date judgment is entered to the date of payment.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Plaintiffs' motion for default judgment be granted, and that judgment be entered against Defendants R.Z. United Construction, Inc., Riadul Islam, and MD Meherul Islam Munna, jointly and severally, as follows: (1) **$42,709.94** in unpaid principal, representing $39,177.09 in unpaid ERISA and non-ERISA contributions and $3,532.85 in unpaid dues

and assessments; (2) **$116,418.11** in prejudgment interest as of December 31, 2025, representing 10 percent interest on the unpaid ERISA and non-ERISA contributions ($106,335.81) and nine percent interest on the unpaid dues ($10,082.30); (3) **$105,271.93** in statutory damages under ERISA, in an amount equal to 10 percent interest on the delinquent and late-paid ERISA contributions as of December 31, 2025; (4) **$72,389.25** in attorneys' fees; (5) **$811.53** in costs; and (6) **$8,675.00** for auditor's fees, for a total of **$346,275.76**. Additional prejudgment interest should be awarded on the unpaid contributions and dues at a daily rate of **$11.60** ($10.73 + $0.87) from January 1, 2026, through the date the Clerk of Court enters final judgment. Finally, Plaintiffs should be awarded post-judgment interest at the rate set forth in 28 U.S.C. § 1961 on the total sum awarded on the date of judgment, accruing through the date of payment.

\*   \*   \*   \*   \*

This report and recommendation will be filed electronically and a copy sent by mail to defaulting Defendants. As a courtesy, the Court also respectfully directs Plaintiff to provide a copy of this report and recommendation to Defendants forthwith and to file proof of same by **January 27, 2026**. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Rachel P. Kovner at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g., Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that

41

"failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate[ judge's] decision" (quotation marks omitted)).

       **SO ORDERED.**

Dated:  Brooklyn, New York
       January 22, 2026

                                      *Taryn A. Merkl*
                                     TARYN A. MERKL
                                     UNITED STATES MAGISTRATE JUDGE